**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 14, 2016**

# In the Court of Appeals of Georgia

A16A1222. MORRIS v. THE STATE.

MILLER, Presiding Judge.

John Morris appeals the trial court's denial of his motion for out-of-time appeal, contending that his trial counsel provided ineffective assistance by failing to adequately inform him of his appeal rights and in failing to obtain his consent to forego an appeal. We agree that the trial court abused its discretion in denying Morris's motion for out-of-time appeal because he did not get adequate notice of his appeal rights and did not voluntarily choose to waive those rights. We therefore reverse.

The defendant bears the burden of demonstrating through the record that he is entitled to an out-of-time appeal. *Simmons v. State*, 276 Ga. 525, 526 (579 SE2d 735) (2003). We review a trial court's denial of a motion for out-of-time appeal for an

abuse of discretion. *Glass v. State*, 248 Ga. App. 91, 92 (1) (545 SE2d 360) (2001). We will affirm the trial court's findings of fact as to whether a defendant was informed of his appeal rights by counsel and voluntarily waived them, so long as there is any evidence to support those findings. Id. Nevertheless, "where the trial court has clearly erred in some of its findings of fact . . . the deference owed the trial court's ultimate ruling is diminished." (Citation omitted.) *State v. Porter*, 288 Ga. 524, 526 (2) (a) (705 SE2d 636) (2011).

So viewed, the record shows that following a jury trial, where he was represented by counsel, Morris was convicted of one count of aggravated child molestation (OCGA § 16-6-4 (d) (1)) and one count of child molestation (OCGA § 16-6-4 (b) (1)). The trial court did not inform Morris of his appellate rights after his conviction or at sentencing. Trial counsel then filed a motion for new trial, rather than a notice of appeal. After the trial court denied the new trial motion, Morris did not file a timely appeal, though he subsequently filed a motion for out-of-time appeal.

Morris approved of his trial counsel, however, Morris's family actually hired and paid his counsel, and the family was highly involved in Morris's defense. Trial

2

counsel spoke in greater detail with Morris's father than he did with Morris about how to proceed with the defense.[1]

Trial counsel admitted that he did not have a single set "spiel" that he used to inform his clients of their appellate rights, although he usually told them "something about where they go from here." Importantly, most of trial counsel's communications about the defense of Morris's case were with Morris's father, even though trial counsel acknowledged he needed to speak to Morris directly. Indeed, after the denial of Morris's motion for new trial, trial counsel specifically recalled speaking with Morris's father about Morris's appellate rights by telling the father that he "would be glad to do it," but he "didn't think it was a good investment" because he "didn't think there was any error that an appellate court would use to reverse the jury's decision in th[e] case." Trial counsel further told Morris's father that he did not recommend utilizing the public defender's office because, in his opinion, "they [do] a very weak job on appeal."

Although trial counsel testified at the motion for out-of-time appeal hearing that he met with Morris after the trial and "talked to him [regarding] something about

---

[1] Trial counsel stated that Morris gave him permission to talk with Morris's father about the case.

appeal," he could not definitively remember what he told Morris after denial of the motion for new trial regarding his appeal rights. Trial counsel *thought* he had a conversation with Morris similar to the one he had with Morris's father, but he could not be sure. It was trial counsel's *"impression"* that the decision not to appeal was made by Morris and his family, and he *"thought"* that Morris and his family were "consulting together" to decide how to proceed. Nevertheless, trial counsel admitted that he never discussed Morris's appeal rights with both Morris and his father present at the same time and he was not sure that Morris ever told him that he consulted with his father and decided not to appeal. Notably, there is no evidence that trial counsel told either Morris or his father that Morris had only thirty days after the denial of the motion for new trial in which to file an appeal.

Morris, on the other hand, testified at the motion for out-of-time appeal hearing that after denial of the motion for new trial, trial counsel never discussed filing an appeal with him, he was unaware of the time deadline or process for filing an appeal, and he assumed trial counsel "was on top of everything." Morris acknowledged knowing that he "could have counsel for appeal," but he claimed that he "wasn't even sure what the appeal was." Morris claimed that he learned months later that no appeal had been undertaken, at which point he engaged new counsel to pursue one.

The trial court's order denying Morris's motion for out-of-time appeal contained a number of factual findings, including its findings that Morris "was advised of his right to appeal in a timely fashion," Morris knew he had the right to counsel on appeal, trial counsel discussed with Morris the relative costs and benefits of pursuing an appeal, and Morris did not retain trial counsel to file an appeal.

1. In two interrelated enumerations of error, Morris argues that trial counsel was ineffective for failing to adequately advise him of his appeal rights or get his consent to forego an appeal. We agree.

"A criminal defendant who has lost his right to appellate review of his conviction due to error of counsel is entitled to an out-of-time appeal." (Citation omitted.) *Rowland v. State*, 264 Ga. 872, 875 (2) (452 SE2d 756) (1995).

> The disposition of a motion for out-of-time appeal hinges on a determination of who bore the ultimate responsibility for the failure to file a timely appeal. Our courts have long recognized the right to effective assistance of counsel on appeal from a criminal conviction, and have permitted out-of-time appeals if the appellant was denied his right of appeal through counsel's negligence or ignorance, or if the appellant was *not adequately informed* of his appeal rights.

(Punctuation omitted; emphasis supplied.) *Glass*, supra, 248 Ga. App. at 92 (1).

5

A "[d]efendant's right to effective assistance of counsel includes the right to be informed of the right to appeal and the right to counsel on appeal, including the right to appointed counsel for indigent defendants." (Citation omitted.) *Floyd v. State*, 279 Ga. App. 21, 23 (630 SE2d 168) (2006); see also *Haynes v. State*, 227 Ga. App. 64, 65 (488 SE2d 119) (1997) (reversing denial of motion for out-of-time appeal where record did not reflect that defendant was informed of his rights or the time constraints involved). "The right to appeal is [also] violated when the [] lawyer deliberately forgoes the direct appeal without first obtaining his client's consent." *Glass*, supra, 248 Ga. App. at 92 (1).

Here, Morris contends that he was denied his right to a timely appeal due to trial counsel's failure to adequately notify him of his appeal rights or obtain his consent to forego an appeal. As set forth above, this Court must defer to the trial court's factual findings if there is any evidence to support them. *Glass*, supra, 248 Ga. App. at 92 (1). Nevertheless, we owe less deference to the trial court's ultimate ruling where the trial court has clearly erred in making its factual findings. *Porter*, supra, 288 Ga. at 526 (2) (a).

Here, there is simply *no evidence* to support the trial court's finding that trial counsel notified *Morris* of his appeal rights and that *Morris* voluntarily waived them.

6

Further, there is *no evidence* that either Morris or his father was informed that Morris had only thirty days in which to pursue an appeal. Instead, the record clearly shows that trial counsel *assumed* that Morris's father would convey trial counsel's advice to Morris, and *assumed* that Morris's failure to take steps towards an appeal were the result of deliberation between Morris and his family.

In so holding, we note that trial courts are permitted to rely upon testimony from trial counsel about what he or she invariably tells all clients about appeal rights, including deadlines, even when the attorney lacks specific recollection of the conversation. See e.g., *Butts v. State*, 244 Ga. App. 366, 367 (536 SE2d 154) (2000); *Jackson v. Hopper*, 243 Ga. 41 (252 SE2d 467) (1979). In this case, however, trial counsel was unable to provide even that minimum level of specificity. Instead, trial counsel testified that he did not have a set "spiel" that he provided to clients except for the vague statement that he usually would "tell [clients] something about where they go from here."

On this record, there simply was no evidence on which the trial court could rely to find that Morris was adequately advised of his appeal rights, including the deadline to assert those rights, and there was no evidence showing that he voluntarily chose to waive his appeal rights. Consequently, we find that trial counsel bore the

7

responsibility for the failure to timely appeal and, thus, was constitutionally ineffective. Accordingly, we reverse the trial court's denial of Morris's motion for out-of-time appeal.

2. In light of our holding in Division 1, we need not address Morris's remaining enumeration of error.

*Judgment reversed. McFadden and McMillian, JJ., concur.*